United States v. Victor Emanuel Carela Good morning. May it please the court. Patricia DeGiunas for Mr. Carela. I'd like to reserve two minutes for rebuttal, please. You may. All of the issues in this case concern, in some way, shape, or form, the red excursion and Mr. Carela's link to that. And because I'm working under the plenary rule, I want to talk first about why that is so important to the government's case. In the closing, the government said that the excursion is an essential element of the drug smuggling venture. And it's more than an essential element. It's necessary to link Mr. Carela to this conspiracy and possession of the drugs that they seized in the location where they did. And the reason for that- Excuse me. He confessed. Well, he confessed. He confessed to participating in a drug smuggling enterprise. He gave no details that linked him to that location. They found him 10 to 12 hours after they found the drugs, two miles away, in an area where the government, again, says this is an area where drug smuggling is known to occur, boats coming in to the coast and delivering drugs. I'm sorry. Is your defense theory he participated in a conspiracy, just not this one? It was not the theory of the defense, but what it goes to show is why the red excursion is so important in Mr. Carela's relation to the red excursion. Because if they can't link him to that car, then there is no link to that particular scene. And I believe the record is that there was an investigation of other boats earlier that same morning before they discovered the drugs and the excursion at the location two miles from where Mr. Carela was found. As to his admission to driving a red guagua, there was no English translation for that word provided. There was a dispute between the official Spanish translation, which is bus, and the government says, well, it's got a loose meaning, it's got a closed  In Puerto Rico, everybody knows what guagua means. I did not know what guagua was, Your Honor. Well, you don't live in Puerto Rico. Well, I don't, but there's also, you know, the Jones Act has some bite to it. Well, if it was a long sentence, it would be one thing, but it's just one statement of something that's almost part of the English language in Puerto Rico. Well, I don't think there's any evidence of that. Well, witnesses testify all the time using words in English, using words borrowed from foreign languages. That happens in Massachusetts and Maine and Rhode Island as well as in Puerto Rico. This isn't like a whole piece of evidence, a whole tape or something that comes in just in a foreign language. So, if we follow your theory to its logical conclusion, then there's a Jones Act violation if a witness happens to use a word like chutzpah or a word like capo to describe a gangster, right, because those are words borrowed from other languages, but they're used. So, this officer who's testifying in English uses a term, a slang term, from the Spanish language and no one, no one, not the prosecutor, not the defense counsel, not the judge, no one seems to feel that there's any need for a translation of it. No one asks him, what do you mean by that word? I did not look at an English dictionary. I don't believe guagua would be in there. I did not know what it meant. I don't think it's as commonly used as the words that you're on. What I'm saying is there's no Jones Act violation because he's testifying in English. So, the Jones Act is a red herring, not to be confused with a red bus or a red truck, a red herring. He testified in English, used a Spanish word that has multiple meanings. That's right, and that can be cleared up very easily by counsel on either side or by the judge asking questions, just the same way as if the witness had used an English word that wasn't commonly understood. There are plenty of words in the English language that are perfectly good words that jurors may not understand, right? But it is an English word, whether or not the average juror understands it, it's in English, the Jones Act is quite clear. Wasn't it a reference to what people called the Red Ford Expedition? So, there's no doubt. We don't have a confusion of anything, really. So, nice try, but perhaps you ought to move on in your argument. Thank you, Your Honor. Getting back to the contract, to the draft contract that was introduced, it was introduced clearly for a hearsay purpose to prove that it was Mr. Corella who purchased it, and there's multiple hearsay in the draft contract because there's also the notary affidavit which Attorney Leon said he only got a cursory glance at the passport, certainly not close enough to have confirmed the passport number and the defendant's name, whether or not it in fact matched, the photograph matched who the person was in front of him. It was admitted for all purposes. There was no hearsay objection, but I think it's clearly introduced and it was used to show that this defendant purchased this excursion that was found at the scene two months earlier, and that was also used in sentencing that he had been planning this for two months. So, I think it's clearly that it's hearsay. It cannot be admitted as a business record, which the government argued, because there's no evidence that Attorney Leon confirmed the accuracy of what the information that necessarily came from third parties who would not have been part of his business by any means. What was the other evidence against your client? Well, that his statement and that he was... His confession, you mean? His confession, his admissions, and the fact that he was arrested two miles away, ten to twelve hours after the fact, and had said he had been in a boat. But there's no fingerprints, no other person puts him there. Really, it's about the excursion, and it's about his statement. But I go back to saying, if you take the red excursion out, you have someone in a high drug smuggling place, found ten to twelve hours after the fact, two miles away, says, I was hired to refuel. Is there any question that his confession was voluntary? There is no issue as to that. So what else do you have to help you? I'm not sure I understand what you mean. But he confessed. What else had to be proven? Well, I do think that the confession to a red guagua is important. It is a word that is in Spanish. The prosecutor certainly overstepped her bounds by providing the only English translation during the closing, which, by the way, is the one that conveniently fits what an excursion is. She didn't say a bus. There was no objection made to the closing. There was no effort during the trial to cross-examine the officer about the meaning of guagua or about the description of the red excursion. So aren't all of these issues essentially not before us? No, Your Honor, and I direct you to the Rosario case, where in that case the defendant's counsel actually acquiesced in the judge's decision not to hold, not to provide. But that's a Jones Act case. That's worth four days' worth of tapes, all in Spanish, were put in without translation. This isn't the Jones Act case. One word doesn't make it a Jones Act case. So you've got to show that the plain error test is met, and you can't show that unless you can show that it's likely that these errors influenced the verdict. And as Judge Torrollaia very cogently pointed out, in view of the defendant's confession, that's not going to happen. I'm out of time. If I could just quickly respond to that. If the court says this is not a Jones Act violation, there's still a problem with the closing argument. And that is just one of several instances of misconduct in the closing argument, many of which relate directly to the excursion, again. So even if it's not a Jones Act violation, and therefore subject to the most favorable standard of review, I think there's still problems in the closing argument. You've reserved two minutes. You can tell us more about that then. Ms. Jorgensen. Yes, Your Honors. Speaking to the issue of the red guagua, there were multiple pictures in the record of the actual Ford excursion. So I think there really was no confusion present. And as Your Honor said, it's a typical word used in Spanish language. There were no objections. In fact, the fact that the prosecutor in her closing argument used the word truck, I would argue if she really were trying to manipulate something, she would say SUV, because really it was more of an SUV. But in any event, that aside, I would say that's an ancillary point because there was so much evidence against him, and he confessed to being offered an exemption, $5,000 for unloading the drug shipment. So I think whether or not he had anything to do with the Ford, it doesn't matter, really. As to the second issue, do Your Honors have any questions before I go over other things? Okay, I will go to the minor role adjustment. I think that the standard of review is abuse of discretion, and I would argue that $5,000 is a pretty good sum for one night's work, and I would not consider that minor myself. I think it was probably within the judge's discretion to not choose to award a minor role adjustment for that, for the activity that he admitted to. It's not a penalty, it's an award for, or it's a consideration of the fact that the person did not have a major role. As to the fact that the, as to the argument that the sentence was procedurally unreasonable as a matter of law, the judge never said tipo guagua. As I said, there were pictures that he was entitled to take into account that there was testimony about the sale of the Ford excursion to Carrillo, and he's entitled to take into account reliable hearsay evidence as well in the sentencing phase. So I think that's really all that I have for Your Honors unless you have any questions. I think this case speaks for itself. Thank you. If you're caught by surprise by her two minutes, we'll give you another minute. Thank you, Your Honors. Thank you. I just want to talk briefly about the closing argument, and I want to highlight for the Court that the prosecutor asked for and had the daily transcripts, assuming that was for the purpose of closing argument, and nevertheless made several material and very false statements, including that the excursion was registered to Mr. Carrillo. It was not. It was always registered to Attorney Leon. This draft contract, it was a draft. It's not actually a legal contract. It doesn't certify anything. It may be evidence of a contract. I maintain that it should not have been admitted because it was used for its hearsay purpose. But even if it did come in for some other reason, the prosecutor repeatedly said that this certifies that it was the defendant who purchased it. In fact, Attorney Leon's identification of Mr. Carrillo as a purchaser is wholly dependent on what the contract says. He had no independent recollection of who he was or the name of the person who purchased the excursion. The prosecutor also suggested, I think, that the actual purchase was a conspiracy in and of itself. It's not a crime, so that would not be a conspiracy. And again, coming back to, it seems as though the court is leaning towards that there's no Jones Act violation, but I submit that it's still improper for a prosecutor to interject a colloquial understanding of a word that was not, in fact, translated, keeping in mind that Mr. Carrillo is not a native Puerto Rican. He's actually from Dominican Republic. So the prosecutor's colloquial understanding is not necessarily what Mr. Carrillo's understanding of the word would have been. So for those reasons and the reasons set forth in our brief, we respectfully ask that you vacate Mr. Carrillo's convictions or remand for resentencing. Thank you. Does the government want more time? Yes, please, Your Honors. I would like to just respond to what she raised. The government concedes that it was error to state that the vehicle was registered. That was not, in fact, correct. The criminal organization which purchased the car did not register it in their name. However, I would say in the context of the whole trial, this does not create a reversible error. The judge was very, very clear in his instructions repeatedly that the arguments by the attorneys were not testimony. They were not evidence. And that any rulings he made and objections were not evidence. And that the jury was to consider the evidence themselves with a clear mind. Second, Attorney Leon testified that he, in fact, did prepare the draft contract. And he was shown a copy of the draft contract, which I have an exhibit of that, which is in the record. And it includes the affidavit, which includes the passport number, which is typed. This was not written by the notary public. So he did say that he, I fully admit, he said cursory when he testified. But he did actually look at it enough to look at the number. Thank you, Counsel. Thank you, Your Honors.